IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | **Criminal No. SAG-20-0701** |
| | * | |
| **NATHANIEL RATCHFORD** | | |

\*\*\*\*\*\*\*

## MEMORANDUM OPINION

On March 10, 2020, Nathaniel Ratchford was arrested pursuant to a criminal complaint charging him with violating 18 U.S.C. § 922(g)(1) (possession of a firearm and ammunition by a convicted felon). ECF 1. United States Magistrate Judge Thomas M. DiGirolamo denied Ratchford's Emergency Motion for Release from Custody on May 7, 2020. ECF 26. Currently pending is Ratchford's appeal of that determination (the "Motion"). ECF 27. The Government filed an opposition, ECF 29, and Ratchford filed a Reply, ECF 30. The Court has also reviewed the Pretrial Services Report and Addendum prepared by U.S. Probation and Pretrial Services, and the recording of Judge DiGirolamo's detention hearing on March 13, 2020. In light of the extensive record before me, no additional hearing is necessary to resolve this Motion. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Ratchford's Motion will be denied.

**I.    Procedural History**

A criminal complaint was filed on March 4, 2020, which charged Ratchford with violating 18 U.S.C. § 922(g)(1), *i.e.*, Possession of a Firearm by a Prohibited Person. ECF 1. Following Ratchford's arrest on March 10, 2020, the Government sought his pretrial detention. Judge DiGirolamo held a detention hearing on March 13, 2020, and, at its conclusion, ordered Ratchford's detention. ECF 11, 12. Approximately one month later, on April 14, 2020, Ratchford filed an emergency motion seeking release from custody. ECF 15. The Government continued to

oppose his release. ECF 17. On May 7, 2020, Judge DiGirolamo denied Ratchford's motion and found for the second time, by clear and convincing evidence, that no condition or combination of conditions could assure the safety of the community and Ratchford's presence if he were to be released. ECF 26. Accordingly, Ratchford remains in pre-trial detention at the D.C. Jail in Washington, D.C. (the "DC Jail").

On June 24, 2020, Ratchford filed the instant Motion seeking review of the Detention Order. ECF 27.

## II. Standard of Review

Pretrial detention and release are governed by the Bail Reform Act ("BRA"), 18 U.S.C. §§ 3141, *et seq.* The government is permitted to seek pretrial detention of a defendant charged with the alleged possession of a firearm. *Id.* § 3142(f)(1)(E). The BRA instructs the Court to seek "the least restrictive further condition or conditions that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(c)(1)(B). However, if the Court finds after the hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court "shall order the detention of the person before trial." *Id.* § 3142(e)(1). Where, as here, a detention ruling is based on a defendant's danger to the community, the Court must make the finding by clear and convincing evidence. *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam).

The Court's determination is governed by four factors:

(1)  The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1951, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive or destructive device;

(2)  The weight of the evidence against the person;

2

 (3) The history and characteristics of the person, including –

   (A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

   (B) Whether, at the time of the current offense or arrest, the person was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

 (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

## III. Analysis

In his Motion, Ratchford leverages the factors above in seeking reversal of Judge DiGirolamo's Detention Order. *See generally* ECF 27. In addition, Ratchford asks this Court to consider the impact of the COVID-19 pandemic and the resulting circumstances at the DC Jail. *Id.* at 10–12. The Court will address each argument in turn.

At the outset, however, it is important to review the overall framework of the detention issues presented to the Court, and the impact of COVID-19 and the conditions within the DC Jail, on each issue. As described above, when considering whether there are any conditions of pretrial release "that will reasonably assure" a particular defendant's appearance in court, and the safety of the community, 18 U.S.C. § 3142(f), Congress carefully prescribed four factors that a court must consider, *id.* § 3142(g). None of those factors refers specifically to whether the conditions of incarceration threaten the defendant's well-being. Instead, Congress focused the required inquiry on the defendant's risk of nonappearance, and the danger that the defendant's release would pose to other individuals. In some circumstances, clearly, a particular defendant's medical

3

condition could reduce that defendant's risk of flight or danger to the community, and the health condition would therefore fall within the factors appropriately considered in the context of § 3142(g). Absent those circumstances, a particular defendant's health conditions, and the possible risks posed to the defendant by incarceration, do not impact the § 3142(f) and (g) analysis. *See, e.g., United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020) ("A defendant's concerns that he or she would face heightened COVID-19 risks if incarcerated would not typically factor into a § 3142(f) analysis, which focuses on whether the court can fashion conditions of release that will reasonably assure the defendant is not a risk of nonappearance or a risk of harm to any others or the community. The risk of harm *to the defendant* does not usually bear on this analysis."); *United States v. Lawton*, Crim. No. CR419-102, 2020 WL 1984897, at *1 (S.D. Ga. Apr. 27, 2020) (same); *United States v. Whyte*, Crim. No. 3:19-cr-64-1 (VLB), 2020 WL 1911187, at *4 (D. Conn. Apr. 8, 2020) (analyzing medical conditions under § 3142(i)); *United States v. Aguirre-Maldonado*, Crim. No. 20-cr-53 (NEB/TNL), 2020 WL 1809180, at *1 (D. Minn. Apr. 9, 2020) ("While the Court appreciates the unprecedented nature of the COVID-19 pandemic, Defendant has offered no reason why the pandemic would reduce his risk of nonappearance or the risk that he poses to the community.").

Even so, as will be discussed below, the COVID-19 pandemic is relevant in the assessment of whether a defendant's temporary release might be appropriate under § 3142(i), and will be considered fully in that context, in accordance with the Fourth Circuit's order in *United States v. Creek*, Criminal No. CCB-19-036, ECF 402 (Apr. 15, 2020) (directing the District Court to consider "in the first instance the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility

where he is being held, and whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a 'compelling reason' for temporary release under 18 U.S.C. § 3142(i).").

### A.  Review of the Detention Decision

Considering the fact that Ratchford is charged with unlawfully possessing a firearm, combined with his criminal record, and his prior noncompliance with court orders, this Court agrees that Ratchford would pose a grave danger to the community if released. This Court concludes that no release condition or combination of conditions would reasonably assure the safety of the community pending trial if Ratchford were to be released. As a result, Ratchford's continued detention is warranted.

#### 1. Nature and Circumstances of the Offense

The analysis begins with consideration of the offense for which Ratchford was arrested. On the night of November 4, 2019, detectives with the Baltimore Police Department ("BPD") were conducting routine patrol of the 1200 block of West Baltimore Street. Detectives observed Ratchford walking along the street with what appeared to be a large bulge in his front waistband. Upon seeing the detectives, Ratchford touched his front waistband, which suggested that he had a firearm, particularly since this area is notorious for drug trafficking and gun violence. Acting on this suspicion, a detective approached Ratchford and said, "Hey bud, can I talk to you real quick?" Rather than speak with the detective, Ratchford immediately threw the food he was holding and began to run away. When BPD detectives eventually blocked his path with their vehicles, Ratchford removed a black handgun from his waistband and threw it over a wall into a construction site. Ratchford was apprehended, and the detectives recovered a loaded Glock 23 .40 caliber handgun in the area where he had thrown it.

#### 2. Weight of the Evidence

It is undisputed that Ratchford was prohibited by law from possessing a firearm on November 4, 2019. Thus, if he was carrying the Glock handgun that was recovered on site, he will have violated 18 U.S.C. § 922(g)(1). Although Ratchford argues vigorously that he did not possess a gun, several detectives witnessed him not only flee, but also throw the handgun over the wall adjacent to a construction site. Detectives recovered the gun after a brief canvas of the area where Ratchford threw it, and the arrest was captured on body worn camera.

Accordingly, the weight of the evidence in this case is overwhelming. Indeed, in Ratchford's prior emergency motion requesting release, he did not challenge Judge DiGirolamo's original findings with respect to the nature and circumstances of the offense or the weight of the evidence. *See* ECF 26 at 8 (affirming the Court's original findings regarding the first two factors).

### 3. History and Characteristics of the Person

Despite being just 34 years of age, Ratchford has an extensive and varied criminal record, which has included multiple stints in prison. In fact, he has been convicted of a nearly identical offense. In 2012, he pled guilty in this Court to Possession of a Firearm and Ammunition by a Prohibited Person, and was sentenced to 87 months of imprisonment. Ratchford began a term of supervised release on April 17, 2018, following the fulfillment of his sentence. However, after receiving 7 reports of noncompliance throughout 2018 and early 2019, he was found guilty of violating supervised release on February 9, 2019. As a result, he was sentenced to 90 days of incarceration, which concluded just few months prior to his arrest for the instant offense. He was not placed back on supervised release after his sentence for the violation, "due to his lack of amenability to supervision." Pretrial Services Report p. 9.

Ratchford's criminal record also includes 3 separate felony drug convictions. The first conviction occurred in February, 2004, for possession with intent to distribute a controlled

dangerous substance ("CDS"). Ratchford was sentenced to 5 years of imprisonment, suspended for all but time served, and he was placed on probation for 2 years, which was terminated unsatisfactorily. He was convicted of CDS distribution in July, 2007, and sentenced to 8 years of imprisonment, also suspended for all but time served. For this second conviction, Ratchford was placed on 3 years of probation. However, he was found in violation of the probation in September, 2009, and, as a result, was sentenced to 3 years of incarceration. Finally, Ratchford was convicted of possession with intent to distribute CDS in July, 2009. He was sentenced to 3 years of incarceration for this third drug offense. Once again, after this term of imprisonment, his mandatory release supervision was revoked, due to a technical violation.

Aside from the gun and drug-related offenses, Ratchford was also convicted of second degree assault in April, 2004. For that offense, he was sentenced to 6 months of incarceration.

### 4. Nature and Seriousness of the Danger to the Community

Ratchford contends that he is charged merely with possessing a gun, rather than with using or even brandishing the weapon. *See* ECF 27 at 2. However, illegal gun possession is itself a serious offense, particularly in a city where gun violence, unfortunately, has become quotidian. *See United States v. West*, No. ELH-19-364, 2020 WL 1820095, at *3 (D. Md. Apr. 10, 2020). The Court would have difficulty overstating the magnitude of the violent crime problem in Baltimore. Even in the midst of an unprecedented global pandemic, gun violence in the city not only persists, but has, according to certain metrics, actually accelerated.[1]

Moreover, courts note that guns are often possessed in order to effectuate drug trafficking activities. *See, e.g., United States v. Manigan*, 592 F.3d 621, 629–30 (4th Cir. 2010). As noted

---

[1] Jessica Anderson, "The coronavirus pandemic and surveillance plane have not stemmed Baltimore's torrid rate of homicides this year," *Baltimore Sun* (June 30, 2020).


above, Ratchford's criminal record includes 3 prior felony drug convictions. The danger that Ratchford poses to the community is more pronounced because of his extensive criminal record involving drugs and guns, and his history of noncompliance with court directives. Just months prior to his arrest for the instant offense, he was incarcerated for violating his supervised release. Furthermore, Ratchford's pattern of noncompliance has not been limited to court proceedings. He struggled with issues of substance abuse as recently as 2019, when he was discharged from an outpatient treatment program due to lack of compliance.

For his proposed conditions of release, Ratchford requests that his mother, Felicia Dorsey, be appointed as third-party custodian. ECF 27 at 4. Ms. Dorsey lives in Baltimore with two daughters and three grandchildren. Ratchford notes that his mother does not work, thus is available to supervise him at all times. Moreover, neither Ms. Dorsey, nor the other home occupants, has any coronavirus-related health conditions. While Ms. Dorsey appears to be a suitable candidate for third-party custodianship, any plan of release depends primarily on the defendant's willingness and ability to comply with the release conditions. Unfortunately, Ratchford has a well-documented and recursive history of failing to abide by court directives. For example, after serving 87 months of incarceration, he was placed on supervised release for a period of 3 years. During this time, his probation officer submitted 7 noncompliance reports, and Ratchford was ultimately found in violation of supervised release and sentenced to 90 days of incarceration. Even when Ratchford had every incentive to follow orders from the court, such as when noncompliance would lead to termination of his supervised release, he still failed to do so. Thus, although traditional electronic monitoring has recently become available, this Court has no confidence that Ratchford, who was described as "not amenable to supervision," would abide by the proposed conditions of release.

Accordingly, application of the § 3142(g) factors demonstrates that no release condition or combination of conditions would reasonably assure the safety of the community pending trial.

## B. Request for Temporary Release Pursuant to § 3142(i)

Section 3142(i) permits "the temporary release of the person, in the custody of a United States marshal or other appropriate person, to the extent that the judicial officer determines such release to be necessary for the preparation of the person's defense or for another compelling reason." Ratchford's case, like all criminal cases, had been postponed by this Court's prior Standing Order canceling all non-emergency court proceedings through June 5, 2020, and the delay occasioned by the pandemic has been excluded under the Speedy Trial Act. *See* Standing Order 2020-07, *In re: Court Operations Under the Exigent Circumstances Created by COVID-19*, Case No. 1:00-mc-00308 (D. Md. April 10, 2020). However, this Order has expired, and the Court recently initiated phase two of its recovery plan. *See* Standing Order 2020-14, *In re: Restrictions on Visitors to Courthouses* (D. Md. June 17, 2020). Even so, Ratchford and his attorney will be afforded whatever time is necessary to confer and to prepare an adequate defense. Prior to implementation of the Court's recovery plan, on April 23, 2020, Chief Judge James K. Bredar issued a COVID-19 related order, 20-mc-146, ECF 14, requiring that the DC Department of Corrections forthwith "ensure that Maryland detainees have reasonable access to their counsel and that counsel have reasonable access to their detainee clients, via telephone at least." Thus, the Sixth Amendment rights of Maryland detainees at the DC Jail will continue to be protected, and there is no need for temporary release to allow for preparation of a defense.

This Court must also assess whether there is "another compelling reason" justifying temporary release under § 3142(i). Prior to the instant pandemic, this provision was "sparingly" used to justify temporary release for specific medical treatments, such as cancer surgery or

9

chemotherapy. *See, e.g., United States v. Hamilton*, 2020 WL 1323036, at *3 (E.D.N.Y. Mar. 23, 2020). Courts have been considering and employing § 3142(i) in a more widespread fashion in the context of COVID-19. The well-reasoned opinion in *Clark*, 2020 WL 1446895, at *3, sets forth four factors to be considered: (1) the original grounds for detention; (2) the specificity of a defendant's COVID-19 concerns; (3) the extent to which the proposed release plan is designed to mitigate or exacerbate other COVID-19 risks to the defendant; and, (4) the likelihood that a defendant's release would increase the COVID-19 risks to others.[2] The Defendant bears the burden of establishing those factors. *See United States v. Sanders*, Crim. No. 19-20037-01-DDC, 2020 WL 1528621, at *3 (D. Kan. March 31, 2020). "The question for the Court is whether the COVID-19 health risks to the Defendant, should he remain detained, outweigh those traditional Section 3142(g) factors and the COVID-19 health risk to the community that Defendant's release could occasion." *United States v. Hernandez*, Crim. No. PX-19-158-9, slip op. at 5-6 (D. Md. Apr. 29, 2020), ECF 385.

As described above, the original grounds for detention weigh strongly in the Government's favor, due to the significant risk Ratchford poses to community safety.

Furthermore, with respect to COVID-19, Ratchford has presented only generalized concerns about the pandemic. This Court does not in any way intend to minimize the suffering that COVID-19 has inflicted on millions of people throughout the world. Fortunately, Ratchford does not have any underlying health conditions that put him at increased risk of developing severe complications if he were to contract the virus. His good health puts him in stark contrast with individuals seeking release from detention because of enhanced vulnerability to COVID-19, many

---

[2] While *Clark* is not binding precedent, its persuasive and logical framework has been adopted by numerous courts around the country, including several in this District. *See, e.g., United States v. Green*, No. 19-cr-00539-CCB, 2020 WL 1873967 (D. Md. April 15, 2020).

10

of whom have had their requests denied as well. *See, e.g., United States v. Bilbrough*, TDC-20-33 (D. Md.), ECF 76 (denying release of defendant with diabetes); *United States v. Parker*, TDC-18-344 (D. Md. 2020), ECF 478 (denying release of defendant with diabetes and a prior bout with prostate cancer); *United States v. Gray*, GJH-19-407 (D. Md. 2020), ECF 120 (denying release of defendant with "diminished immune system, heart flutters, and shortness of breath"). Here, Ratchford does not contend that he has any relevant preexisting medical conditions, nor any particular vulnerability to the Coronavirus. Indeed, as set forth in the Pretrial Services Report, Ratchford stated that he is in good physical health, and has no medical issues. And he has not indicated any changes to his health in the briefing submitted to this Court.

Rather than identify specific information about his health, Ratchford instead relies on general information about the conditions at his detention facility. For instance, one report stated that, as of June 17, 2020, 77 residents of the DC Jail were in quarantine, while 1,186 had been returned to the broader population after "recovery." *See* ECF 27 at 9–10 (citing *Public Safety Agency COVID-19 Case Data*, Gov't of the District of Columbia).

As Ratchford points out, a class action lawsuit was filed on behalf of persons detained at the DC Jail and the adjoining Central Detention Facility ("CDF") in the United States District Court for the District of Columbia earlier this year. *See Banks v. Booth*, No. 20-849-CKK (D.D.C. Apr. 19, 2020). The lawsuit sought immediate release or transfer of those detained, contending that CTF's inadequate response to the COVID-19 pandemic violates the detainees' constitutional rights. The presiding United States District Judge, Colleen Kollar-Kotelly, appointed independent inspectors to provide a comprehensive report and recommendations describing the conditions inside CTF, with respect to the safety of those incarcerated. *Id.*, ECF 47. Upon review of the inspectors' report, Judge Kollar-Kotelly issued a Temporary Restraining Order, requiring certain

specific corrective action aimed at immediately improving the conditions of confinement at CTF. *Id.*, ECF 48. Notably, however, Judge Kollar-Kotelly did not authorize the relief requested by the plaintiffs, declining to order the release of inmates at D.C. Department of Corrections ("DOC") facilities. *Id.*, ECF 49.

Further, since issuance of the TRO, DOC has taken numerous steps to implement reforms, the combination of which appear to have made the facility safer for all individuals. In a hearing held on May 11, 2020, inspectors assigned in the *Banks* litigation explained that medical care for inmates in quarantine and isolation has improved dramatically. *See, e.g.*, ECF 29-2 at 24 ("According to the management of the medical program, the expectation is that inmates in isolation are monitored by nursing staff twice per day and, additionally, by advanced care providers twice per day."). Moreover, DOC adopted a system in which inmates that have tested positive are placed in a specific level of quarantine, depending on that individual's particular symptoms and prior contact with the virus. The Government also reports that, in accordance with Judge Kollar-Kotelly's Order, cleaning supplies and equipment are now more abundant. These reforms appear to be working since — incredibly — as of June 25, 2020, there were no positive COVID-19 cases at DOC's correctional facilities. Several judges have commented on the declining infection rates at these facilities, particularly since mid-April. *See, e.g., United States of America v. Attia*, PWG-19-193 (May 22, 2020), ECF 67 ("[T]he conditions at CTF have improved, such as inmates' increased access to medical care who are in isolation and quarantine and increased access to cleaning supplies and equipment."). Accordingly, given the significant improvements at the DC Jail, release is not warranted based on general concerns about COVID-19. Indeed, Judge Kollar-Kotelly herself denied a request for temporary release where the defendant failed to explain why he had an individualized need to be removed from the facility. *See United States v. Riggins*, 2020

WL 1984263, at *9 (D.D.C. Apr. 27, 2020) ("There is therefore little evidence in the current record to demonstrate that the asthma [the defendant] intermittently has puts him at a higher risk for getting severely ill if he contracts COVID-19.").

## IV. CONCLUSION

For the reasons stated herein, Ratchford's Motion for Review of Detention Order, ECF 27, is DENIED. The Government's apparently misfiled "Motion to Review Detention Order," ECF 29, which should have been captioned as an opposition to Ratchford's Motion, is also DENIED.

Dated: July 2, 2020

/s/
Stephanie A. Gallagher
United States District Judge

FILED _____ ENTERED
LOGGED _____ RECEIVED

JUL 06 2020

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY